## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**MIKAYLA OVERTON,**                          :

             **Plaintiff,**        :   **CIV. ACTION NO. 3:25-cv-870**

        **v.**                                    **(JUDGE MANNION)**

                          :

**THE MEADOWS AT SUMMIT FOR
NURSING & REHABILITATION
LLC, D/B/A THE GARDENS AT** :
**WYOMING VALLEY**

           **Defendant.**         :

## MEMORANDUM

Presently before the court is Defendant, The Meadows at Summit for Nursing and Rehabilitation LLC, D/B/A The Gardens at Wyoming Valley's, motion to dismiss certain claims of hostile work environment, retaliation, and race discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §1981 ("§1981"), and the Pennsylvania Human Relations Act ("PHRA") brought by a terminated employee, Plaintiff Mikayla Overton. Defendant moves to dismiss the claims brought against it arguing that Plaintiff failed to state a claim upon which relief may be granted. For the reasons discussed below, the court will **GRANT IN PART** and **DENY IN PART** Defendant's motion to dismiss **(Doc. 9)**.

## I.   **BACKGROUND**

The background of this case is taken from the factual allegations set forth in Plaintiff's Complaint, (Doc. 1), which the court must accept as true on motion to dismiss, as well as any matters of public record relevant to this case.[1]

Defendant hired Plaintiff, an African American female, as a Nursing Aide. (Doc. 1, ¶¶2).[2] On August 19, 2023, Plaintiff alleges that a white co-worker, Joan, referred to Plaintiff and another African American co-worker as "black bitch," and "nigger." (*Id.* at ¶¶12). Plaintiff immediately reported Joan's behavior to Defendant's Human Resources, requesting that she be moved to a different shift to avoid working with her. (*Id.* at ¶¶13-14). Defendant's Human Resources did not grant Plaintiff's request to change shifts but advised Plaintiff they would "speak to" Joan. (*Id.* at ¶¶15-16).

---

[1] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure §1357, at 299 (2d ed.1990)).

[2] Plaintiff alleges that she was hired "in or around September 2023," (Doc. 1, ¶11), a date which precedes the chronology of events central to her claims. However, Defendant clarifies in their brief that the hiring took place in July 2023. (Doc. 9, p. 2).

The following day, Joan referred to Plaintiff as "black bitch" again, leading Plaintiff to make the same report to Human Resources requesting to no longer be scheduled to work with her. (Doc. 1, ¶¶17-18). Defendant did not fulfill Plaintiff's request, and continued to schedule her to work with Joan. (*Id.* at ¶¶19-20). On or about September 12, 2023, Plaintiff requested an assignment of *per diem* status, which would allow Plaintiff to schedule her own shifts to avoid working with Joan. (*Id.* ¶¶21-22). The next day, Plaintiff renewed her request for *per diem* status. (*Id.* at ¶¶23). However, Plaintiff alleges that Defendant did not respond to Plaintiff and ceased scheduling her all together, which was understood by Plaintiff as a termination. (*Id.* at ¶¶24-25).

On or about April 9, 2024, Plaintiff filed a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (Doc 1, ¶¶26). On or about August 23, 2024, the EEOC issued Plaintiff a right to sue letter related to the Complaint of Discrimination. (*Id.* at ¶¶27). On November 19, 2024, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, and the Pennsylvania Human Relations Act. (Doc. 1). On February 28, 2025, Defendant filed the instant motion to dismiss these claims (Doc. 9, p. 1). On

May 16, 2025, the case was transferred to the Middle District of Pennsylvania. (Doc. 14). With all briefs submitted by the parties, the motion is now ripe for disposition.

## II.  <u>LEGAL STANDARD</u>

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint does not need "detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. The plausibility standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Third Circuit uses a three-step process to evaluate the sufficiency of a complaint. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). A court must first " 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' " *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S.

- 4 -

at 675). Second, a court should "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.' " *Id.* at 789 (quoting *Iqbal*, 556 U.S. at 679). Third, a court must evaluate the "plausibility of the remaining allegations. That involves assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in the plaintiff's favor." *Lutz v. Portfolio Recovery Assocs.*, 43 F.4th 323, 327 (3d Cir. 2022); *see also Connelly*, 809 F.3d at 787. Thus, a court's inquiry is broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

After completing this process, if the complaint "alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements of a claim, then it plausibly pleads a claim." *Lutz*, 49 F.4th at 328 (alterations in original) (quoting *Twombly*, 550 U.S. at 556); *see also Connelly*, 809 F.3d at 789. The doors of discovery are not unlocked for "a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Furthermore, a well-pleaded complaint may proceed "even if it

strikes a savvy judge that actual proof of those facts is improbable."
*Twombly*, 550 U.S. at 556. But where the "well-pleaded facts do not permit
the court to infer more than the mere possibility of misconduct, the complaint
has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' "
*Iqbal*, 556 U.S. at 679 (alterations in original) (quoting Fed R. Civ. P. 8(a)(2)).

The court should generally grant leave to amend a pleading before
dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote
Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Shane v.
Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). However, dismissal without
leave to amend is justified on the grounds of bad faith, undue delay,
prejudice, or futility. *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).
"Futility means that the complaint, as amended, would fail to state a claim
upon which relief could be granted." *In re Merck & Co., Inc. Sec., Derivative
& ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007) (citing *In re Burlington Coat
Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

## III.  DISCUSSION

Plaintiff's complaint asserts seven counts, each reflecting distinct
statutory claims: Counts I, II, IV, and V allege hostile work environment and
retaliation under Title VII and §1981; Count III raises a standalone race
discrimination claim under Title VII; and Counts VI and VII bring race

discrimination and retaliation claims under the Pennsylvania Human Relations Act (PHRA). (Doc. 1, ¶¶28-66). The court will discuss each of Plaintiff's claims in turn.

### A. Plaintiff's claims pursuant to the PHRA are time barred.

When alleging Title VII and PHRA violations, a plaintiff has a 300-day deadline for their Title VII claims and a 180-day deadline for their PHRA claims. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 164 (3d Cir. 2013). Plaintiff had 180 days after the alleged act of discrimination to file a complaint pursuant to the PHRA. 43 Pa. Stat. §959(h). Plaintiff alleges she was effectively terminated on or around September 13, 2023. (Doc.1 at ¶¶23-25). Plaintiff needed to file her charge by March 11, 2024 to be within 180 days of the alleged act of discrimination. However, Plaintiff filed her charge on April 9, 2024, (*Id.* at ¶¶26), over 180 days after, rendering the filing untimely.

Accordingly, because Plaintiff's PHRA claims are time barred, the Court will dismiss those claims with prejudice, since allowing leave to amend would be futile.

**B. Plaintiff has not alleged sufficient facts to sustain her race discrimination claim under Title VII.**

When assessing a complaint, the court must first identify the required elements of the claim. *See Malleus*, 641 F.3d at 563. Employment discrimination claims are "subject to the same analysis as discrimination claims under Title VII of the Civil Rights Act of 1964." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017); *see also Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009). In order to establish a prima facie case of Title VII discrimination, courts look to four elements:

> (1) she is a member of a protected class, (2) she satisfactorily performed the duties required by her position, (3) she suffered an adverse employment action, and (4) either similarly-situated non-members of the protected class were treated more favorably or the adverse job action occurred under circumstances that give rise to an inference of discrimination.

*See Wallace v. Federated Dept. Stores*, 214 F. App'x 142, 144-45 (3d Cir. 2007); *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

Stray remarks by non-decision makers that are not linked to a decisionmaker cannot support an inference of discriminatory animus. *See Gomez v. Allegheny Health Services, Inc.*, 71 F.3d 1079, 1085 (3d Cir.

1995); *see also Carilli v. Mut. of Omaha Ins. Co.*, 67 F. App'x 133, 135 (3d Cir. 2003) (holding that the plaintiff failed to link evidence of numerous stray remarks by non-decision makers to his firing so as to reasonably support an inference of discriminatory intent).

Here, Plaintiff does not allege any conduct by Defendant that supports an inference of discriminatory intent. In Plaintiff's complaint, the only discriminatory conduct alleged are the remarks from Joan, a co-worker of Plaintiff. Although these remarks are grossly offensive, there is nothing to suggest Joan was a decisionmaker in any capacity and, therefore, her offensive comments are similar to the non-decision makers in *Gomez* and *Carilli*. Accordingly, those remarks cannot be shown to have any connection to the Defendant's adverse action.

Plaintiff's complaint fails to allege any facts suggesting that Defendant terminated her because of her race. Rather, Plaintiff simply asserts the legal conclusion that she was fired "because of her race"—a conclusory claim that courts must disregard under *Twombly* and *Iqbal*. Without any factual support, Plaintiff's discriminatory discharge claim falls short of plausibility. Accordingly, her race discrimination claim (Count III) must be dismissed without prejudice.

### C. Plaintiff sufficiently pleads a hostile work environment claim under Title VII and §1981.

A §1981 hostile work environment claim is "analyzed in the same manner as under Title VII." *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 653 (E.D. Pa. 2015). The Third Circuit addresses five elements when assessing a hostile work environment claim:

> To succeed on a hostile work environment claim, a plaintiff must prove: 1) the employee suffered intentional discrimination because of his/her [race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability.

*Mandel*, 706 F.3d at 167 (emphasis in original). An employer is not always liable for a hostile work environment, and it must be shown the employer knew or should have known of harassment but failed to take remedial action. *See Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 293 (3d Cir. 1999) (finding that because the defendant reasonably failed to discover the harassment alleged by the plaintiff, *respondeat superior* liability cannot be shown and the plaintiff's claim must fail); *see also Andrews v. City of Phila.*, 895 F.2d 1469, 1486 (3d Cir. 1990) ("liability exists where the

defendant knew or should have known of the harassment and failed to take prompt remedial action.").

For the purposes of their motion to dismiss only, Defendant admits Plaintiff adequately alleged the first, third, and fifth prong of the five-prong test for a hostile work environment claim under Title VII. *See* (Doc. 9 at p. 11, note 5). However, Defendant contends that Plaintiff's complaint fails to contain allegations sufficient to meet the second and fourth prong of a hostile work environment claim; in effect, that "the discrimination was severe or pervasive" and that it "would detrimentally affect a reasonable person in like circumstances." (*Id.* at pp. 11-13; *see Mandel*, 706 F.3d at 167). The Court disagrees.

To allege the second prong of severe or pervasive, the discrimination must alter the conditions of the victim's employment and create an abusive working environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001); *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). The Supreme Court has held that "isolated incidents (*unless extremely serious*) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788 (emphasis added). It is also important that any inappropriate comments are directed at the employee,

- 11 -

and not just made in general. *See Nitkin v. Mainline Health*, 67 F.4th 565, 571 (3d Cir. 2023) (granting summary judgment for the defendant because the plaintiff needed to present more than vague statements).

The Third Circuit has expanded upon what constitutes an "extremely serious" incident in *Castleberry v. STI Grp.*, where the plaintiffs, two African-American men, were told by their supervisor that if "they 'nigger-rigged' the fence, they would be fired." 863 F.3d 259, 262 (3d Cir. 2017). The Third Circuit emphasized that the standard for alleging a hostile work environment requires either severe *or* pervasive discrimination, meaning an isolated incident of discrimination can suffice to state a claim of harassment if severe enough. *Id.* at 265. The Third Circuit in *Castleberry* held that the plaintiffs subjected to the "n-word" even in a single incident established the prima facie elements of a hostile work environment—finding that the isolated use of a racial epithet was severe enough to survive dismissal. *Id.* at 266. The use of the "n-word" has been found to be particularly "odious and offensive" in the workplace. *See Thomas v. Bronco Oilfield Services*, 503 F.Supp.3d 276, 299 (W.D. Pa. 2020). Courts within the Third Circuit, as well as our sister circuits, recognize its profound impact and objective offensiveness. *See E.E.O.C v. Bimbo Bakeries USA, Inc.*, No. 09–CV-1872, 2010 WL 598641 (M.D. Pa. Feb. 17, 2010) (stating the use of the "n-word" can quickly change the

atmosphere, environment, and culture of a workplace from positive to poisonous); *see also Nuness v. Simon & Schuster, Inc.*, 325 F. Supp. 3d 535, 547 (D.N.J. 2018) (expressing its sincere hope that little need be said to establish the objective offensiveness, and the severity of that offense, of the "n-word"); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998) (holding the "n-word" as highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) (finding the "n-word" to be perhaps the most offensive and inflammatory racial slur in English).

However, not all discriminatory remarks are treated the same. Off-handed comments or mere offensive utterances are not enough for hostile work environment claims. *See Chandler v. La-Z Boy, Inc.*, 621 F. Supp. 3d 568, 573 (E.D. Pa. 2022). In *Chandler*, the plaintiff was called a "colored girl" by her manager once, and "sick" and "lazy" by her co-workers on a daily basis. 621 F. Supp. 3d at 572. The court dismissed the complaint because the manager's comment was deemed not severe enough and no facts suggest the comments by the co-workers were racially-based. *Id.* at 574, 576.

Here, Plaintiff plausibly alleges the second prong, which is that the discrimination she faced was severe. Being called the "n-word" along with

back-to-back days of being called "black bitch" clearly meets the severity threshold required to survive a motion to dismiss. This parallels *Castleberry*, where even a single use of the "n-word" by a supervisor was held "severe" enough to state a hostile work environment claim and avoid dismissal. 863 F.3d at 266, 268. Accordingly, Plaintiff alleges both repeated and escalating racial slurs—far more egregious than the isolated "colored girl" remark rejected in *Chandler,* 503 F.Supp.3d at 299—offering sufficient factual details that elevate her claim beyond mere speculation and render it facially plausible.

Additionally, due to the severity of the "n-word," such a discriminatory remark would detrimentally affect a reasonable person satisfying the fourth prong of the hostile-work-environment test. As stated in *Nuness*, little need to be said about the objective offensiveness and severity of the "n-word." 325 F. Supp. 3d at 547. Here, Plaintiff's co-worker's discriminatory remarks are objectively offensive, and any reasonable person similarly situated would be harshly impacted.

In sum, Plaintiff plausibly alleges enough facts to establish all the elements of a hostile work environment claim under Title VII and §1981 to survive a motion to dismiss.

### D. Plaintiff sufficiently pleads a claim of retaliation under Title VII and §1981.

Retaliation claims pursuant to Title VII and §1981 are governed by the same standards. *See Patel v. CF Fresh LLC*, 2024 WL 957973, at *3 (3d Cir. 2024); *see also Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). When assessing retaliation claims, the Third Circuit requires a plaintiff show "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). A plaintiff may rely on a "broad array of evidence" to demonstrate a causal link between his protected activity and the adverse action taken against him. *See Marra v. Phil. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). Additionally, an "unusually suggestive" proximity in time between the protected activity and the adverse action may be enough on its own to establish the causation element. *Id.*

A plaintiff in a retaliation case "need not prove the merits of the underlying discrimination complaint." *Daniels*, 776 F.3d at 193-94 (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 344 (3d Cir. 2006)). However,

she must have "act[ed] under a good faith, reasonable belief that a violation existed." *Id.*

Causation is the element of a plaintiff's prima facie case, not temporal proximity itself. *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997). Temporal proximity merely "provides an evidentiary basis from which an inference can be drawn". *Id.* There are no parameters for what constitutes an unusually suggestive amount of time to constitute temporal proximity, and instead are decided within the context of the particular circumstances. *Id.*

Temporal proximity requires a very short period of time between the protected employee action and the adverse employer action. *Killen v. Nw. Hum. Servs., Inc.*, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007). In *Killen*, the court found seventeen days not "unusually suggestive" enough to establish causation for the heightened summary judgment standard. *Id.* However, in *Shellenberger v. Summit Bancorp, Inc.*, ten days has been found to be enough to establish causation when combined with employers' remarks which suggested the plaintiff was fired for taking the "legal route." 318 F.3d 183, 189 (3d Cir. 2003).

An unusually suggestive time frame may give rise to the inference of causation, but it is not legally conclusive and other types of circumstantial

evidence are to be considered. *Marra*, 497 F.3d at 302. In *Marra*, the court affirmed judgment for the plaintiffs after reviewing the evidence they presented at trial, clarifying they are mindful of the procedural posture of the case when assessing causation. *Id.* at 302, 309.

A plaintiff need not prove all the elements of their case to survive a motion to dismiss, but rather raise a reasonable expectation that discovery will reveal evidence of those elements, even if it seems unlikely that she will prevail. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 793 (3d Cir. 2016) (finding the plaintiff alleged facts that "raised a reasonable inference that discovery will reveal evidence of the elements necessary to establish her claims.").

Here, Plaintiff alleges sufficient facts to support a reasonable expectation that discovery will reveal evidence of causation. Unlike in *Killen*, where the court evaluated a fully developed factual record at the summary-judgment stage, the current motion to dismiss faces a significantly lower burden—requiring only that the complaint's allegations be accepted as true and construed in the plaintiff's favor. Furthermore, Plaintiff alleges that Defendant effectively terminated her employment roughly three weeks after the initial incident—coinciding with her request for *per diem* status following Defendant's failure to address her coworker's misconduct—thereby creating

- 17 -

a plausible causal link that merits further factual development. Although twenty-three days is a longer interval than the 10-day period found "unusually suggestive" in *Shellenberger*, such proximity may support an inference of causation when accompanied by additional evidence uncovered in discovery.

In *Connelly*, the Third Circuit applied the favorable *Twombly*-stage standard, holding that causation may be established through temporal proximity and contextual evidence—even where success on the merits seemed initially uncertain. *Connelly*, 809 F.3d at 793. By contrast, *Marra* involved a full evidentiary record at trial, which is inapplicable here. 497 F.3d at 302. Plaintiff has not reached summary judgment or trial—she remains at the pleading stage and should be allowed discovery to marshal evidence, even if proving causation may ultimately prove challenging. Accordingly, at this stage of the proceedings, her retaliation claims include sufficient factual detail to survive a motion to dismiss and proceed to discovery.

## IV.    CONCLUSION

Based on the foregoing, the court will **GRANT IN PART** and **DENY IN PART** Defendant's motion to dismiss (**Doc. 9**). Count III is dismissed without prejudice and Counts VI, and VII are dismissed with prejudice. All remaining claims will proceed to discovery. An appropriate order follows.

_____
**MALACHY E. MANNION**
**United States District Judge**

**DATE:**  7/8/25
25-870-01